# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

PATRICIA LINDSEY,

      Plaintiff,

      v.                                CIVIL NO. 2:17-cv-464

RICOH USA, INC., et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on a Motion to Dismiss the Amended Complaint ("Motion to Dismiss") filed by defendants Ricoh USA, Inc. and Robert Staton (collectively, "Defendants"). ECF No. 12. For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.    PROCEDURAL BACKGROUND

Patricia Lindsey ("Plaintiff") filed the Amended Complaint against defendants Ricoh USA, Inc. ("Ricoh") and Robert Staton ("Mr. Staton") on August 30, 2017.[1] ECF No. 3. Counts I–IV of the Amended Complaint allege sex and racial discrimination by Defendants in violation of Title VII of the Civil Rights Act, 42. U.S.C. § 2000e, et seq., specifically, hostile work environment sex harassment (Count I); quid pro quo sex discrimination (Count II); hostile work environment racial harassment (Count III); and retaliation (Count IV). Id. Plaintiff also asserts common law claims of negligent hiring and negligent retention against Ricoh (Count V) and intentional infliction of emotional distress against both Defendants (Count VI). Id.

---

[1] Plaintiff attempted to file her complaint on August 29, 2017, but the submission was defective for lack of signature. ECF No. 1. Plaintiff fixed the error and filed the corrected document as the "Amended Complaint" on August 30, 2017. ECF No. 3.

On December 1, 2017, Defendants filed the instant Motion to Dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, ECF No. 12, which was accompanied by a supporting memorandum ("Def. Mem."), ECF No. 13. On December 14, 2017, Plaintiff filed a response in opposition to Defendants' Motion to Dismiss ("Resp."). ECF No. 15. On December 20, 2017, Defendants filed a reply brief ("Reply"). ECF No. 16. At the request of the Defendants, the parties appeared before the Court on February 21, 2018, for a hearing on Defendants' Motion to Dismiss. ECF No. 18. Such motion is now before the Court.

## II. FACTUAL BACKGROUND

The following is a summary of the facts alleged in Plaintiff's Amended Complaint ("Am. Compl."). Plaintiff is a female Native American citizen of the United States and a resident of Norfolk, Virginia. Am. Compl., ECF No. 3, ¶ 3. She was an employee of Ricoh within the meaning of 42 U.S.C. § 2000e(f) from June, 2008, until she was terminated on November 1, 2016. Id. ¶ 4. From 2008 to 2014, she held the position of Site Manager II, and from 2014 until her termination, she held the position of Service Delivery Manager. Id. Ricoh is an employer within the meaning of U.S.C. § 2000e(b) and does business in Norfolk, Virginia. Id. ¶¶ 5–7. Mr. Staton is a citizen of the United States and resident of Richmond, Virginia. Id. ¶ 8. At all times relevant to this action, Mr. Staton was employed by Ricoh as an Area Manager in Norfolk, Virginia, and was Plaintiff's supervisor. Id.

### Allegations of Sexual Discrimination

In June, 2009, Plaintiff began reporting directly to Mr. Staton. Id. ¶ 23. Beginning at that time, and persisting through Plaintiff's employment with Ricoh, Mr. Staton frequently implied that he wanted Plaintiff to perform sexual favors for him in exchange for employment benefits. Id. ¶ 28. On one occasion in August, 2009, Plaintiff complained to Mr. Staton after he made a series of comments to her about being inferior because she was female. Id. ¶ 34. In

response, Mr. Staton told Plaintiff that "if she wanted him to reconsider promoting her and to stop verbally abusing her that she could provide him with oral sex." Id. He further stated that "if [Plaintiff] provided him with oral sex then all the trouble he was causing her would go away." Id. Plaintiff further alleges that, on October 9, 2014, Mr. Staton asked Plaintiff to have drinks with him at his hotel, which she refused. Id. ¶ 52. After she refused, Mr. Staton's hostile treatment toward Plaintiff intensified. Id. "From this time until [Plaintiff's] termination, each and every time Mr. Staton spoke to [Plaintiff] he treated her with hostility." Id.

Also beginning in the summer of 2009, and persisting through Plaintiff's employment with Ricoh, Mr. Staton made frequent sex-based comments to Plaintiff that were "derogatory, abusive, and demeaning." Id. ¶ 29. For example, Mr. Staton told Plaintiff that he disliked working with women, that women were too emotional, and that they were a "pain in his ass." Id. ¶ 37. He also told Plaintiff that he preferred female managers to wear low-cut tops in order to show cleavage. Id. He also repeatedly told Plaintiff that she was stupid and fat," including one occasion when he asked, "How can you walk in high heels when you are so fat?" Id.

On two occasions in June, 2009, Plaintiff complained to Mr. Staton about his verbal abuse toward her. Id. ¶¶ 30, 32. On the first occasion, Mr. Staton responded with expletives and warned that Plaintiff should "never talk to a man like that" because she "was only a woman." Id. ¶ 30. On the second occasion, Mr. Staton indicated to Plaintiff that, so long as she was under his supervision, she would not be promoted as expected nor advance in the company. Id. ¶ 32.

In August, 2009, and November, 2010, Mr. Staton indicated to Plaintiff in harsh language that she was stupid, weak, and/or incompetent at her job because she was female. Id. ¶¶ 34, 41. Moreover, on several occasions between 2012 and 2015, Mr. Staton told Plaintiff that he disliked working with her and/or disapproved of her work performance because she was female and

hinted that her job was at risk. Id. ¶¶ 46, 47, 49, 51, 53. Plaintiff alleges that she reported this verbal harassment to human resources on at least five occasions during this time period, but each time Ricoh failed to take any corrective action. Id. ¶¶ 31, 33, 35, 48, 50. In addition, throughout 2016 until Plaintiff was terminated, Mr. Staton continued to make many degrading and misogynistic comments to Plaintiff about her weight, appearance, and intelligence because she was a woman. Id. ¶ 65.

Plaintiff also alleges that in December, 2010, and October, 2011, Mr. Staton unjustifiably denied Plaintiff earned vacation time. Id. ¶¶ 42, 44. On both occasions, Plaintiff reported the conduct to human resources, and both times Ricoh failed to take any corrective action. Id. ¶¶ 43, 45.

**Allegations of Racial Discrimination**

On September 30, 2015, Mr. Staton informed Plaintiff that he was restructuring and that Plaintiff would start reporting to a new supervisor, Pamela Vanover, who would in turn report to Mr. Staton. Id. ¶ 55. Plaintiff claims that Mr. Staton "instructed Ms. Vanover to treat [Plaintiff] harshly in an effort to see [Plaintiff] resign," and that "Ms. Vanover did in fact subject Plaintiff to constant hostility." Id. ¶ 56. On July 14, 2016, Ms. Vanover told Plaintiff that she was a "joke as a manager" and threatened Plaintiff's job. Id. ¶ 59. When Plaintiff called Mr. Staton attempting to report this incident, Mr. Staton hung up on her. Id. ¶ 60.

In addition, Ms. Vanover frequently "taunted" Plaintiff because of her American Indian heritage. Id. ¶ 61. Specifically, Ms. Vanover left a bottle of hair removal on Plaintiff's desk; she told Plaintiff "the reason why the Indians lost to the Cowboys is because you were stupid;" and told Plaintiff that American Indian status does not matter at Ricoh. Id.

Furthermore, on August 15, 2016, Ms. Vanover instructed Plaintiff to participate in a

"pagan ritual" at work, which included burning sage in order to "get[] rid of demons" from the office. Id. ¶ 62. Plaintiff refused and said she did not believe in pagan ceremonies. Id. In response, Ms. Vanover said, "Aren't you American Indian?" Id. Later that day, Ms. Vanover pointed a bundle of sage in Plaintiff's face saying, "I am exercising [sic] demons," implying that Plaintiff was a demon. Id. Ms. Vanover then stated that Plaintiff should assist with the exorcism ritual because she is American Indian and therefore is accustomed to performing rituals. Id. Plaintiff again resisted. Id. When Plaintiff reported this incident to Mr. Staton the next day, he responded that Ms. Vanover was probably kidding and told Plaintiff not to report it to human resources, saying that "she would be sorry" if she did. Id. ¶ 63. Plaintiff feared she would be fired if she reported the incident to human resources. Id.

On September 15, 2016, Ms. Vanover called Plaintiff on her personal cell phone to tell her that Ms. Vanover was changing worksites within Ricoh. Id. ¶ 66. She implied that this transfer was due to Plaintiff's complaints by stating, "the Indians did not win against the white man years ago, but you did today." Id. Ms. Vanover also warned Plaintiff that Mr. Staton wanted to fire Plaintiff, that her "days were numbered," and that "the reasons why Indians lost were because they were dumb." Id. Plaintiff immediately reported this conversation to Mr. Staton who told Plaintiff to forget the conversation. Id. ¶ 67.

### Plaintiff's Termination from Ricoh

On October 5, 2016, Plaintiff learned from human resources personnel that Ms. Vanover submitted a "false and defamatory report" regarding Plaintiff to human resources. Id. ¶ 68. In response, Plaintiff told human resources that she felt that the false report was made in retaliation, that she feared that she would lose her job, and that she therefore felt uncomfortable participating in any further investigation involving Ms. Vanover or Ms. Staton. Id. She also communicated

the same in writing to human resources via email.  Id.

On November 1, 2016, Mr. Staton terminated Plaintiff.  Id. ¶ 69.  Mr. Staton and Ricoh stated that she was terminated for cause because she had failed to report an incident involving employee Sharon Whitfield making a threat on October 4, 2016.  Id.  According to Plaintiff, however, this stated cause was "entirely pretextual."  Id.  She claims that the real reason she was terminated was in retaliation for her refusal to consent to Mr. Staton's sexual advances as well as for making numerous reports to human resources regarding the hostile workplace to which she had been subjected.  Id.

Plaintiff further alleges that, immediately upon being terminated, she began to have difficulty breathing.  Id. ¶ 70.  When she arrived home, her husband took her to the emergency room, where she was admitted for two days.  Id.  Plaintiff's medical providers told her that she could not work for three months.  Id.  Plaintiff further alleges that, prior to her termination, she had been receiving medical treatment for more than two years for work-related stress.  Id.

### Plaintiff's EEOC Proceedings

On March 6, 2017, approximately four months after her termination from Ricoh, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC").  See Charge No. 437-2017-00501, Exhibit 1 to Am. Compl., ECF No. 3-1 at 1.  On June 2, 2017, the EEOC issued a Dismissal and Notice of Rights form ("Notice") to Plaintiff regarding Plaintiff's Charge.  See Exhibit 2 to Am. Compl., ECF No. 3-2, at 1.  The Notice indicates that a copy of same was forwarded to defense counsel in this case.  Id.  On August 30, 2017, Plaintiff timely filed the instant lawsuit.  ECF No. 3.

## III.    DEFENDANTS' RULE 12(B)(1) MOTION TO DISMISS COUNTS I–IV

Defendants first argue that all of Plaintiff's Title VII claims (Counts I–IV of the Amended Complaint) should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of

Civil Procedure for lack of subject jurisdiction because Plaintiff's EEOC Charge is not reasonably related to such claims and therefore Plaintiff did not exhaust her administrative remedies as required under 42 U.S.C. § 2000e-5(b). ECF No. 13 at 6–7. Defendants' Rule 12(b)(1) motion shall be granted in part and denied in part, as set forth below.

## A.    THE EXHAUSTION REQUIREMENT

A plaintiff is required to file a charge with the EEOC and exhaust her administrative remedies before filing suit under Title VII. Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 132 (4th Cir. 2002); see also 42 U.S.C. § 2000e–5(f)(1). The "failure by [a] plaintiff to exhaust [such] administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). However, the filing of an EEOC charge "is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005). "Rather, the charge itself serves a vital function in the process of remedying an unlawful employment practice." Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 407 (4th Cir. 2013).

To file a charge with the EEOC concerning a Title VII violation, an aggrieved complainant must first submit to the EEOC information supporting the allegation, usually in the form of an intake questionnaire. 29 C.F.R. § 1601.6.[2] After receiving this information, the EEOC typically assists the complainant with filing a charge, including by drafting the charge itself, as was the case here. See Balas, 711 F.3d at 407 (citation omitted). A charge is deemed sufficient if it is "a written statement sufficiently precise to identify the parties, and to describe

---

[2] The federal regulations set forth in 29 C.F.R. § 1601, et seq., were established by the EEOC to govern its administration and enforcement of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA") of 1990, and the Genetic Information Nondiscrimination Act ("GINA") of 2008. 29 C.F.R. § 1601.1.

generally the action or practices complained of." 29 C.F.R. § 1606.12(b). It must also be signed and verified. Id. § 1601.9.

Within ten days after the charge is filed, the EEOC sends a notice and a copy of the charge to the respondent-employer. 29 C.F.R. § 1601.14. With this notice, the employer has the chance to "conduct its own investigation and attempt to resolve any discriminatory actions internally." Balas, 711 F.3d at 407 (citation omitted). The filing of the charge also triggers the EEOC's own investigation into the allegations and deployment of its "agency-monitored settlement" efforts. Id. The EEOC then may conclude its investigation in one of many ways, including (i) trying to resolve the matter through conciliation, (ii) filing suit, or (iii) permitting the complainant to file suit by issuing a notice of right to sue. 29 C.F.R. §§ 1601.24, 1601.28. Any notice of right to sue must include a copy of the charge. Id. § 1601.28(e)(3). Upon receipt of a notice of right to sue, the complainant has ninety days to file a lawsuit based on the charge. 42 U.S.C. § 2000e-5(f)(1).

As evidenced by these regulations, the "primary purpose" of Title VII's exhaustion requirement is "notice and conciliation." Chacko, 429 F.3d at 510. Therefore, the EEOC charge is not only a prerequisite to filing a Title VII suit; it also defines the scope of the formal litigation that follows once administrative remedies have been exhausted. Id. at 509. "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Jones, 551 F.3d at 300 (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996)). Specifically, if the charge references "different time frame, actors, and discriminatory conduct" than those alleged in the formal lawsuit, such claim is procedurally barred. Chacko, 429 F.3d at 506.

## B. DETERMINING THE SCOPE OF PLAINTIFF'S CHARGE

Plaintiff argues that Defendants' Rule 12(b)(1) motion should be denied because she has exhausted her administrative remedies with respect to each of her Title VII claims. In support, she makes two alternative arguments. First, she claims that, pursuant to the Supreme Court's decision in <u>Federal Express Corp. v. Holowecki</u>, 552 U.S. 389 (2008), this Court may look to her EEOC intake questionnaire in addition to her formal Charge to determine the permissible scope of her Title VII claims. ECF No. 15 at 1–2. Plaintiff's intake questionnaire, which is attached as an exhibit to Plaintiff's response, was filed with the EEOC on March 2, 2017, four days before her Charge was filed. ECF No. 15-1. It contains detailed allegations regarding Defendants' hostile and discriminatory treatment of Plaintiff in the workplace, which are not contained in Plaintiff's Charge. <u>Id.</u> Plaintiff argues that her Charge and her intake questionnaire, when considered together, satisfy the exhaustion requirement. ECF No. 15 at 5–7. Alternatively, Plaintiff claims that, even without the intake questionnaire, her Charge is sufficiently related to her Title VII claims to satisfy the exhaustion requirement. <u>Id.</u> at 11. Defendants dispute both claims. Therefore, a threshold issue before the Court is whether, pursuant to <u>Holowecki</u>, Plaintiff's intake questionnaire may be considered as part of her Charge for exhaustion purposes.

### 1. <u>Holowecki</u> and Its Progeny

In <u>Holowecki,</u> fourteen current and former FedEx couriers sued FedEx for violations of the Age Discrimination in Employment Act ("ADEA"). 552 U.S. at 394. FedEx moved to dismiss the action as to one of the plaintiffs, Ms. Kennedy, on the grounds that she had not filed her EEOC charge at least sixty days before filing suit. <u>Id.</u> The issue before the Supreme Court was whether Ms. Kennedy had filed a valid "charge" under the ADEA by submitting EEOC Form 283 (an intake questionnaire), to which she attached a signed affidavit detailing FedEx's alleged discriminatory employment practices. <u>Id.</u> at 394–95. The Supreme Court concluded that

she had.  Id. at 404.  The Court held that, for a filing to be deemed a charge under the ADEA, "[i]n addition to the information required by the regulations, . . . it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee" (hereinafter, the "request-to-act" requirement).  Id. at 402.  In so holding, the Court deferred to the EEOC's reasonable interpretation of its own regulations pertaining to the requirements for a "charge" under the ADEA enforcement scheme.[3]  Id. at 397 (citing Auer v. Robbins, 519 U.S. 452 (1997)).

Even though Holowecki considered EEOC charges under the ADEA, not Title VII, Plaintiff argues that it applies to her case.  However, this Court has been inconsistent in its application of Holowecki to Title VII cases.  In Graves v. Industrial Power Generating Corporation, the Court refused to expand the scope of plaintiff's charge to include her intake questionnaire for purposes of exhausting her Title VII claims.  No. 3:09cv717, 2011 WL 63696, at *8 (E.D. Va. Jan. 5, 2011) (noting that such questionnaire was "a private, unsworn document between [the plaintiff] and the EEOC" and notice of same was not provided to the respondent), aff'd, 438 F. App'x 174 (4th Cir. 2011).  In a footnote, the Court explained that Holowecki "does not affect the analysis" because Holowecki requires a questionnaire to be sworn or accompanied by an affidavit before it can be deemed a charge, and in Graves, the questionnaire was unsworn. Id. at *8 n.19.

In another line of cases, this Court has held that, under Holowecki, an EEOC intake questionnaire can be deemed a charge for purposes of a satisfying Title VII's 300-day filing limit.  See Bland v. Fairfax County, 799 F. Supp. 2d 609, 616 (E.D. Va. 2011) (Cacheris, J.)

---

[3] Specifically, the EEOC's position was that the applicable ADEA enforcement regulations do not identify all necessary components of a charge, and that a charge must do more than meet the requirements of 29 C.F.R. § 1626.6.  Holowecki, 552 U.S. at 397.  The Supreme Court deferred to this position and then determined that a charge must also have a request-to-act component.  Id. at 397, 402.

(adopting <u>Taylor v. Oce Imagistics, Inc.</u>, No. 3:07cv792, 2008 WL 2148557 (E.D. Va. 2008) (Spencer, J.) (intake questionnaire containing Title VII and ADEA claims deemed a timely-filed charge under <u>Holowecki</u>)); <u>Thorington v. Sally Beauty Supply, LLC</u>, No. 1:16cv626, 2017 WL 1954539 (E.D. Va. May 10, 2017) (O'Grady, J.). In each case, the plaintiff failed to file an EEOC charge at least 300 days before filing suit but had filed an EEOC intake questionnaire within that time period. <u>Bland</u>, 799 F. Supp. 2d at 614; <u>Taylor</u>, 2008 WL 2148557, at *1; <u>Thorington</u>, 2017 WL 1954539, at *2. In each case, the Court found that the plaintiff's questionnaire contained sufficient request-to-act language to be deemed a "charge" under <u>Holowecki</u>. <u>Bland</u>, 799 F. Supp. 2d at 615; <u>Taylor</u>, 2008 WL 2148557, at *3; <u>Thorington</u>, 2017 WL 1954539, at *5. In so holding, both the <u>Bland</u> Court and the <u>Thorington</u> Court departed from <u>Graves</u> by concluding that <u>Holowecki</u> does not require a questionnaire to be sworn for it to be deemed a charge. <u>Bland</u>, 799 F. Supp. 2d at 616; <u>Thorington</u>, 2017 WL 1954539, at *5.

### 2. <u>Holowecki</u> Does Not Apply Here.

The Court finds that <u>Holowecki</u> is inapplicable to Plaintiff's case for two reasons. First, as discussed above, this Court has limited the holding of <u>Holowecki</u> to situations where a plaintiff seeks to have an EEOC filing other than the plaintiff's formal charge be considered the "charge" for purposes of defeating a Title VII time-bar defense. Such is not the case here. Rather, Plaintiff asks the Court to treat her intake questionnaire as part of her formal Charge for exhaustion purposes even though such Charge was timely filed and was treated as the operative charge of discrimination throughout her EEOC proceedings. But Plaintiff has not identified any case in which <u>Holowecki</u> was applied for this purpose. In fact, other federal courts have declined to expand <u>Holowecki</u> in this way. <u>See, e.g.</u>, <u>Green v. JP Morgan Chase Bank Nat. Ass'n</u>, 501 F. App'x 727, 731 (10th Cir. 2012) (<u>Holowecki</u> does not permit plaintiffs to use an intake questionnaire to supplement claims in a timely-filed charge for exhaustion purposes); <u>Ahuja v.</u>

Detica Inc., 873 F. Supp. 2d 221, 230 (D.D.C. 2012) (same); Brown v. Target, Inc., No. 14-00950, 2015 WL 2452617, at *6 (D. Md. May 20, 2015) (same). This Court agrees and finds Plaintiff's reliance on Holowecki to be misplaced.

Second, even if the holding of Holowecki were so expanded, Plaintiff's intake questionnaire would not constitute a "charge" because it does not satisfy the applicable regulatory requirements for charges under Title VII. Such requirements are different and more detailed than those pertaining to the ADEA.[4] For this reason, the Supreme Court in Holowecki expressly warned against applying regulatory rules across different enforcement schemes:

> [T]he EEOC enforcement mechanisms and statutory waiting periods for ADEA claims differ in some respects from those pertaining to other statutes the EEOC enforces, such as [Title VII], 42 U.S.C. § 2000e et seq., and the [ADA], 42 U.S.C. § 12101 et seq. While there may be areas of common definition, employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.

Holowecki, 552 U.S. at 393. Therefore, any application of Holowecki to Title VII cases must account for the EEOC regulations applicable to such cases.

Pursuant to Title VII regulations, Plaintiff's intake questionnaire cannot be deemed a "charge" because it is not verified as required under 29 C.F.R. § 1601.9. See also 42 U.S.C. § 2000e-5(b) ("Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires.") This rule is not a mere formality. The Fourth Circuit has held that "failure to comply with [the verification requirement] is fatal to an action seeking relief under Title VII." Balazs v. Liebenthal, 32 F.3d 151, 156 (4th Cir. 1994). Nevertheless, during the hearing on Defendants' motion, Plaintiff relied on Bland and Thorington to argue that verification is not required under the Holowecki standard. See

---

[4] As noted above, 29 C.F.R. §§ 1601 et seq. contains the regulatory procedures established by the EEOC for the administration and enforcement of Title VII, see supra n.3, while regulations pertaining to the ADEA are contained in a completely separate part of the Code of the Federal Regulations, id. § 1626.1.

discussion supra Part III.B.1. However, Plaintiffs' cases are not persuasive on this point because they fail to account for the fact that the ADEA regulations, which were at issue in Holowecki, do not include a verification requirement. See 29 C.F.R. § 1626.6. Because verification is mandatory under Title VII, Plaintiff's intake questionnaire does not satisfy the EEOC's regulatory requirements for a charge and thus Holowecki does not apply here.

In her response, Plaintiff also relies on the Supreme Court's directive that "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." Holowecki, 552 U.S. at 406. But Plaintiff's proposed expansion of her Charge goes too far. The Fourth Circuit has held that intake questionnaires and other submissions to the EEOC "cannot be read as part of [the] formal discrimination charge without contravening the purposes of Title VII." Balas, 711 F.3d at 408. In so holding, the Fourth Circuit reasoned that to read into a charge allegations it does not contain undermines the statutory goals of "putting [the] employer on notice [and] encouraging conciliation." Id. (citing Sloop v. Mem'l Mission Hosp., Inc., 198 F.3d 147, 149 (4th Cir. 1999)).

The same is true here. A copy of Plaintiff's intake questionnaire was never furnished to the respondent as required under 29 C.F.R. § 1601.14. In fact, Defendants did not receive a copy of the intake questionnaire until it was attached to Plaintiff's briefing on the instant Motion to Dismiss. See Resp., ECF No. 15, at Exhibit 1. Furthermore, the EEOC at all times treated Plaintiff's formal Charge as the operative charge document, and such document is the only "charge" referenced in Plaintiff's Amended Complaint. Compl. ¶ 15. Therefore, to allow Plaintiff to expand the contents of her Charge as she requests would run afoul of Balas and undermine the primary goals of exhaustion under Title VII.

For these reasons, the Court finds that it may only look to Plaintiff's formal Charge to determine if Plaintiff has exhausted her administrative remedies as required under Title VII.

## C. PLAINTIFF'S CHARGE IS NOT REASONABLY RELATED TO COUNTS I, II, OR III

Having determined the proper scope of Plaintiff's Charge, the next issue before the Court is whether Plaintiff has exhausted her remedies as to each of her Title VII claims. This analysis necessarily begins with a review of Plaintiff's Charge. See Charge No. 437-2017-00501, Exhibit 1 to Am. Compl., ECF No. 3-1 at 1. In the Charge, the "particulars" of the alleged discrimination are described as follows:

> I began employment with the above named employer May 23, 1994. I was discharged from my position of Service Delivery Manager on October 31, 2016.
>
> The reason Robert Staton, Area Manager gave for my discharge was not reporting a threat against the managers to Human Resources (even though it had already been reported).
>
> I believe I was discharged because of my race, American Indian; sex, female; and in retaliation for participating in an investigation about a practice of witchcraft (Pagan religion). I also believe I was discharged because of my age, 53 in violation of the Age Discrimination Employment Act.

Id. Furthermore, the boxes next to "RACE," "SEX," "RETALIATION," and "AGE" are checked as the bases of the alleged discrimination. Id. The Charge also indicates that the latest date discrimination took place was on "10-31-2016." Id. There is no earliest date of discrimination listed, and the box next to "CONTINUING ACTION" is not checked. Id. In sum, Plaintiff's Charge identifies three discrete acts of discrimination relevant to Title VII – discharged because of race, discharged because of sex, and discharged in retaliation for being part of an investigation – all of which occurred on one day, the day of Plaintiff's discharge. It also identifies one discrete actor: Mr. Staton.

### 1. Count I (Hostile Work Environment Sexual Harassment)

Defendants argue that these discrete acts of discrimination, all involving Plaintiff's

14

termination from Ricoh, are not reasonably related to Plaintiff's hostile work environment sex harassment claim (Count I) sufficient to meet the exhaustion requirement. The Court agrees. Count I is based on a wide range of harassing conduct by Mr. Staton that allegedly occurred over a seven-year span, including, for example, requests for sexual favors, frequent misogynistic comments, verbally abusive and demeaning reprimands, and insults regarding Plaintiff's weight, appearance, and intelligence. Plaintiff's Charge, by contrast, does not mention any harassing conduct or comments by Mr. Staton or by anyone else for that matter. Nor does it check the box for "CONTINUING ACTION" or mention any acts of discrimination occurring before October 31, 2016. Therefore, Plaintiff's Charge did not reasonably notify Defendants of the "broader pattern of misconduct" on which Count I is based. See Chacko, 429 F.3d at 509. Nor is it reasonable to expect that an investigation into the allegations of Plaintiff's Charge would have uncovered evidence of such a pattern if one existed. See id.

Moreover, this Court routinely finds no exhaustion where one form of sex discrimination is alleged in the Charge (here: disparate treatment) and a different form of sex discrimination is alleged in the complaint (here: hostile work environment). See, e.g., Logan v. Colonial Williamsburg Hotel Properties, Inc., 941 F. Supp. 60, 62 (E.D. Va. 1996), aff'd, 155 F.3d 559 (4th Cir. 1998); Baiden-Adams v. Forsythe Transp., Inc., 969 F. Supp. 2d 422, 429 (E.D. Va. 2013). For these reasons, Count I of the Amended Complaint is not reasonably related to the Plaintiff's Charge and must be dismissed for lack of subject matter jurisdiction.

### 2. Count II (Quid Pro Quo Discrimination)

Defendants also move to dismiss Plaintiff's quid pro quo sexual harassment claim (Count II) on exhaustion grounds. They argue that Plaintiff's Charge does not allege or even imply that Plaintiff received unwanted sexual advances or any quid-pro-quo offer of any kind, and thus the Charge is not reasonably related to the quid pro quo claim made in the Amended Complaint.

The Court agrees. Similar to Count I, the disparate treatment alleged in Plaintiff's Charge is a completely different form of discrimination than the quid pro quo sexual harassment alleged in Count II such that Defendants had no reasonable notice of the claim. See Logan, 941 F. Supp. at 62; Baiden-Adams, 969 F. Supp. 2d at 429. Furthermore, an investigation into Plaintiff's Charge would not have uncovered evidence of this claim given that Plaintiff's Charge lacks any factual allegations even remotely related to Plaintiff's quid pro quo allegations such as promotion or vacation issues. See Bolt v. Norfolk S. Corp., 22 F. Supp. 2d 512, 517 (E.D. Va. 1997) (factual statement in charge alleging sexual harassment was not reasonably related to quid pro quo claim where it contained no allegations of pay or promotions issues). Here, where sexual harassment is not even alleged in Plaintiff's Charge, a claim for quid pro quo sexual harassment is certainly beyond its scope. See id.; Porch v. Am. K-9 Interdiction, LLC, No. 2:12cv690, 2013 WL 4804285, at *7 (E.D. Va. Sept. 6, 2013) (citation omitted). Therefore, Count II must also be dismissed for lack of subject matter jurisdiction.

### 3.    Count III (Hostile Work Environment Racial Harassment)

Defendants also move to dismiss Plaintiff's hostile work environment racial harassment claim (Count III) on largely the same grounds as Count I. They argue that Plaintiff's Charge only relates to her termination from Ricoh and is not reasonably related to the broad pattern of misconduct alleged as the basis of her hostile work environment racial harassment claim (Count III). The Court agrees.

In her Amended Complaint, Plaintiff alleges that beginning in September, 2015, when Ms. Vanover became her supervisor, and through October, 2016, Ms. Vanover frequently taunted Plaintiff and made insulting comments with respect to her American Indian heritage. Plaintiff also alleges that, in August, 2016, Ms. Vanover tried to involve Plaintiff in a pagan ritual at work because of Plaintiff's American Indian heritage even though Plaintiff resisted and

communicated her discomfort with the ritual. Plaintiff's Charge, by contrast, mentions race only in the context of her alleged discriminatory discharge, and mentions the pagan ritual only in the context of her alleged retaliatory discharge. Furthermore, the Charge does not mention (i) Ms. Vanover, (ii) any incidents of harassment, or (iii) any wrongful conduct occurring prior to October 31, 2016. Nor does it check the box for "CONTINUING ACTION." Therefore, Count III is based on "different time frame, actors, and discriminatory conduct" than those alleged in Plaintiff's Charge and therefore is procedurally barred. Chacko, 429 F.3d at 506. For this reason, Count III of the Amended Complaint must be dismissed for lack of subject matter jurisdiction.

### 4. Count IV (Retaliation)

Lastly, Defendants argue that Plaintiff has not exhausted her remedies with respect to Count IV because the basis of the retaliation alleged in Count IV (i.e., being terminated for making complaints of sexual and racial harassment, hostile work environment, and/or quid pro quo discrimination) is different from the basis of the retaliation alleged in Plaintiff's Charge (i.e., being terminated for participating in an investigation of a pagan ritual/witchcraft). In support, Defendants rely on this Court's decision in Baiden-Adams in which the plaintiff's retaliatory discharge claim was dismissed because it was based on plaintiff's alleged efforts to protect co-workers from sexual harassment whereas the retaliatory discharge alleged in her EEOC charge was based on her complaints about pay. 969 F. Supp. 2d at 431–32. The Court reasoned that the plaintiff's retaliation claim was not reasonably related to her charge because it did not "grow out of the allegations" contained therein. Id. at 432.

As applied here, the Court agrees that Plaintiff has not exhausted her administrative remedies with respect to the full scope of Count IV as alleged in the Amended Complaint. However, the Court finds that Plaintiff has exhausted her remedies to the extent Count IV alleges

retaliatory discharge for complaining to Ricoh, through its managers, of racial harassment beginning and in connection with the alleged pagan ritual incident occurring on or about August 15, 2016. As set forth below, such claim is reasonably related to Plaintiff's Charge and, in any event, would "grow out" of a reasonable investigation into the allegations contained therein.

First, unlike the charge in Baiden-Adams, the Charge here explicitly alleges retaliatory discharge in the factual statement and checks the box for "RETALIATION" as a basis for discrimination. See id. at 431. While the protected activity identified in the Charge appears, on its face, to be unrelated to making complaints about Title VII discrimination at the workplace, the allegations of the Amended Complaint show that Plaintiff's alleged investigation into the pagan ritual incident is reasonably related to Plaintiff's complaints to Ricoh about racial harassment as alleged in the Amended Complaint.

For example, according to the Amended Complaint, the pagan ritual incident occurred on August 15, 2016, approximately two and a half months before Plaintiff was terminated from Ricoh. Plaintiff claims that Ms. Vanover used the ritual to taunt her about her American Indian heritage. Plaintiff further claims that she reported such "race-based harassment" to Mr. Staton the next day, who instructed her not to report the incident to human resources or "she would be sorry." Compl. ¶ 63. The Amended Complaint goes on to describe a series of events connected to this incident: the transfer of Ms. Vanover to another division on September 15, 2016; Ms. Vanover's additional race-based comments and threats to Plaintiff's job based on Ms. Vanover's belief that Plaintiff caused her transfer; Ms. Vanover's subsequent complaint to human resources about Plaintiff, which Plaintiff discovered on October 5, 2016; and Plaintiff's termination on November 1, 2016. See id. ¶¶ 66–69. These allegations are reasonably related to Plaintiff's claim in her Charge that she was terminated "in retaliation for participating in an investigation

about a practice of witchcraft (Pagan religion)." Therefore, to the extent Count IV is based on such allegations, the Court has jurisdiction over the claim.

However, as indicated above, Plaintiff has not exhausted her administrative remedies with respect to the remaining allegations in Count IV. First, Plaintiff's claim that she was terminated "after reporting discrimination in violation of Title VII to the EEOC" is clearly beyond the scope of her Charge. See Compl. ¶ 106. Plaintiff's Charge was filed several months after Plaintiff was terminated, and it does not reference any prior report of discrimination to the EEOC. Nor does Plaintiff allege elsewhere in the Amended Complaint that she made any prior report of discrimination to the EEOC. Therefore, it does not appear that a reasonable investigation into her Charge would reveal the same.

Second, to the extent Count IV is based on some adverse employment action other than Plaintiff's termination, such claim is beyond the scope of Plaintiff's Charge. Id. ¶ 107. As noted above, Plaintiff's Charge is limited to several discrete acts of discrimination, all of which are based on Plaintiff's termination. Therefore, no reasonable investigation into the Charge would lead to the discovery of other adverse employment actions.

Third, to the extent Count IV is based on Plaintiff making complaints of hostile work environment sexual harassment and/or quid pro quo discrimination, id., such claim is also beyond the scope of her Charge. It is true that a reasonable investigation into Plaintiff's Charge would review the causes of Plaintiff's termination and therefore lead to the discovery of certain incidents surrounding her termination, including any complaints made by Plaintiff to human resources or to her supervisors. But incidents too remote in time would be outside the scope of a reasonable investigation. Here, the earliest relevant incident alleged in the Charge is the pagan ritual incident, which allegedly occurred in August, 2016. According to the Amended

Complaint, Plaintiff's most recent complaint of sex discrimination to Ricoh personnel occurred on May 26, 2016, nearly three months earlier. See Compl. ¶ 58. This is too remote from the allegations contained in Plaintiff's Charge for exhaustion purposes. For this reason, Plaintiff has not exhausted her remedies with respect to Count IV to the extent it is based on Plaintiff's alleged complaints of sexual harassment or other forms of sex discrimination.

In sum, Plaintiff has exhausted her remedies with respect to Count IV only as to her claim that was terminated from Ricoh in retaliation for her complaints of racial harassment in connection and beginning with the alleged pagan ritual incident occurring on or about August 15, 2016. Therefore, this Court has jurisdiction over such claim, and Defendants' motion to dismiss Count IV for lack of subject matter jurisdiction is hereby denied with respect to same.

## IV. DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS COUNTS V & VI

In the second part of Defendants' Motion to Dismiss, they move to dismiss Plaintiff's state law claims of negligent hiring and retention (Count V) and intentional infliction of emotional distress (Count VI) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") for failure to state a claim.

### A. STANDARD OF REVIEW

A Rule 12(b)(6) motion should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The purpose of such a motion is to test the sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, a court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Although the truth of the facts

alleged is assumed, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id.

## B.   CHOICE OF LAW

When deciding state law claims under supplemental jurisdiction, a federal court must apply the choice-of-law rules of the jurisdiction in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941). This Court sits in Virginia, and Virginia's choice-of-law rule for tort claims is the doctrine of lex loci delicti, or the law of the place of the wrong. McFarland v. Virginia Ret. Servs. of Chesterfield, L.L.C., 477 F. Supp. 2d 727, 732 (E.D. Va. 2007) (citing Dreher v. Budget Rent–A–Car Sys., Inc., 272 Va. 390 (2006) (citations omitted)). Because all of Defendants' alleged wrongs occurred in Virginia, Virginia law applies to Plaintiff's tort claims. Plaintiff does not dispute this.

## C.   NEGLIGENT HIRING AND RETENTION (COUNT V)

In Count V of the Amended Complaint, Plaintiff alleges that Defendant Ricoh was negligent in its hiring and retention of Mr. Staton as an employee and that such negligence foreseeably caused harm to Plaintiff. Compl. ¶¶ 115–16. As Defendants rightly point out in their Motion to Dismiss, negligent hiring and negligent retention are two independent torts under Virginia law. See Se. Apartments Mgmt., Inc. v. Jackman, 257 Va. 256, 260 (1999). Pursuant to Rule 12(b)(6), Defendants argue that Plaintiff has failed to state a claim for either tort, raising several different grounds for dismissal. One such ground is that Plaintiff fails to allege physical injury or a threat of such injury, which is a necessary element of both negligent hiring and negligent retention. For the reasons below, the Court agrees.

To state a claim for negligent hiring under Virginia law, a "plaintiff must allege that [1] the employee had a known propensity of being a danger to others in the past, [2] the employer knew or should have known through reasonable discovery about these acts, and [3] the employer

hired an unfit employee and placed him in a situation where he could create an unreasonable risk of harm to others." Clements v. MCV Associated Physicians, 61 Va. Cir. 673 (2002) (citing Interim Pers. of Cent. Virginia, Inc. v. Messer, 263 Va. 435, 441 (2002)). "[T]he Virginia Supreme Court has determined that the 'unreasonable risk of harm' element requires the threat of serious and significant physical injury." Parker v. Geneva Enterprises, Inc., 997 F. Supp. 706, 713 (E.D. Va. 1997) (collecting cases).

The tort of negligent retention is "similar though distinct" from the tort of negligent hiring. Ingleson v. Burlington Medical Supplies, Inc., 141 F. Supp. 3d 579, 585 (E.D. Va. 2015) (citation omitted). This tort imposes liability on an employer for "harm resulting from the employer's negligence in retaining a dangerous employee who the employer knew or should have known was dangerous and likely to harm [others]." Se. Apartments Mgmt, Inc. v. Jackman, 257 Va. 256, 260–61 (1999). As this Court has recognized in the past, the Virginia Supreme Court has not definitively stated that physical injury is a necessary element of this tort, but several courts in this circuit have construed Virginia law as requiring allegations of "serious and significant physical injury" to state a claim for negligent retention. Ingleson, 141 F. Supp. 3d at 585 (collecting cases). This comports with the Virginia Supreme Court's other holdings which consistently bar recovery to plaintiffs for emotional injuries resulting from a defendant's negligence "without proof of contemporaneous physical injury." Elrod v. Busch Entm't Corp., 479 Fed. App'x 550, 551 (4th Cir. 2012).

Based on the above, it is clear that Plaintiff has failed to allege sufficient physical injury or risk thereof to state a claim for either negligent hiring or negligent retention under Virginia law. In the Amended Complaint, Plaintiff claims that she received "unwelcome sexual advances" and other sexual harassment in the form of "verbal and physical conduct" as the result

of Ricoh's negligence. Compl. ¶ 113. But sexual harassment, absent allegations of serious physical injury, cannot sustain a claim for negligent hiring or retention. Parker, 997 F. Supp. at 713–14; cf. J. v. Victory Tabernacle Baptist Church, 236 Va. 206, 211 (1988) (allegations of repeated rape and sexual assault by employee sufficient to state a claim of negligent hiring). By way of "injury," Plaintiff alleges in the Amended Complaint that she suffered from work-related stress and that, directly after her termination, she had difficulty breathing and was admitted to the hospital for two days (with no physical diagnosis). Compl. ¶ 70. But "this sort of run-of-the-mill emotional distress language" also falls short of alleging requisite physical injury to sustain Plaintiff's negligence claims. Griffith v. Wal-Mart Stores E., L.P., No. 6:12cv00011, 2012 WL 5465501, at *11 (W.D. Va. Aug. 24, 2012).

For this reason, the Court **FINDS** that Count V fails to state a claim for either negligent hiring or negligent retention under Virginia law.[5] Accordingly, the Court hereby **DISMISSES** same **WITHOUT PREJUDICE**, and Plaintiff shall have thirty days to amend such claims if she so desires. Because Plaintiff has failed to state a claim for relief in Count V, the Court declines to reach Defendants' alternative grounds for dismissing Count V at this time.

### D. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT VI)

Defendants also move to dismiss Count VI of the Amended Complaint for failure to state a claim. Count VI alleges intentional infliction of emotional distress against both Defendants. Compl. ¶ 120. To state a claim for intentional infliction of emotional distress under Virginia law, a plaintiff must allege that: (1) the defendant acted intentionally or recklessly; (2) the behavior was outrageous or intolerable; (3) a causal connection exists between the behavior and

---

[5] Notably, Plaintiff failed to defend against these deficiencies in her response brief, which only states in a conclusory fashion that "Plaintiff has adequately pled factual allegations . . . sufficient to state such a claim." ECF No. 15 at 14. Furthermore, when the Court provided Plaintiff's counsel an opportunity to expound on that position during the hearing, he declined.

the emotional distress; and (4) the resulting emotional distress was severe. <u>Harris v. Kreutzer</u>, 271 Va. 188, 203 (Va. 2006) (citation omitted). With respect to the second element, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Id.</u> at 204 (quoting <u>Russo v. White</u>, 241 Va. 23, 27 (1991)).

Defendants' first purported ground for dismissal of Count VI is that Plaintiff has failed to allege sufficiently outrageous or intolerable behavior by the Defendants. In support, they argue that "courts applying the Virginia rule have uniformly indicated that in the great majority of cases, employment discrimination will not meet this demanding standard." ECF No. 13 (quoting <u>Burke v. AT&T Technical Serv. Co.</u>, 55 F. Supp. 2d 432, 441 (E.D. Va. 1999). Defendants cite to a myriad of cases in which various forms of sexual or racial harassment in the workplace were found to be insufficiently outrageous, including (i) repeated ridicule based on religion, gender, and disability, <u>Webb v. Baxter Healthcare Corp.</u>, 57 F.3d 1067, at *6 (4th Cir. 1995) (unpublished); (ii) making sexual comments and delivering pornography to plaintiff's mailbox, <u>Dwyer v. Smith</u>, 867 F.2d 184, 194–95 (4th Cir. 1989); (iii) racial slurs and race-based termination from employment, <u>White v. Ocean Duchess Inc.</u>, No. 2:07cv300, 2007 WL 4874709, at *5 (E.D. Va. Nov. 7, 2007); and (iv) using racially abusive language and symbols and refusing to promote plaintiff, <u>Coles v. Carilion Clinic</u>, 894 F. Supp. 2d 783, 796–97 (W.D. Va. 2012).

In response, Plaintiff argues that her case is "distinct from 'the great majority' of employment cases Defendant references precisely because of the outrageous conduct described in [Plaintiff's] Amended Complaint." Resp., ECF No. 15, at 14. However, upon reviewing the Amended Complaint, even the most serious and offensive conduct alleged therein does not qualify as outrageous when compared to the types of harassing conduct routinely found to be

insufficient to state a claim for intentional infliction of emotional distress under Virginia law. For example, Plaintiff alleges that Mr. Staton propositioned her by asking for oral sex in exchange for certain benefits at work. Compl. ¶ 34. But this type of sexual harassment, without more egregious conduct (e.g., groping and assault) is not enough. See Dwyer, 867 F.2d at 194–95; cf. Speight v. Albano Cleaners, Inc., 21 F. Supp. 2d 560 (E.D. Va. 1998) (putting hand under employee's skirt and attempting to grab her buttocks and separate attempt to grab her breast was sufficiently outrageous conduct). Plaintiff also alleges that Mr. Staton frequently berated her using expletives, misogynistic themes, and sexually debasing language. See generally Compl. But such conduct, though reprehensible, "unmannered [and] uncouth," does not rise to level of outrage required. Shiflett v. GE Fanuc Automation Corp., No. 95-0073-C, 1996 WL 481082, at *3 (W.D. Va. July 23, 1996) (insults about an employees' deafness, public screaming and cursing, and demeaning comments not sufficiently outrageous).

For this reason, the Court **FINDS** that Count VI fails to state a claim for intentional infliction of emotional distress under Virginia law. Accordingly, the Court hereby **DISMISSES** same **WITHOUT PREJUDICE**, and Plaintiff shall have thirty days to amend such claim if she so desires. Because Plaintiff has failed to state a claim for relief in Count VI, the Court declines to reach Defendants' alternative grounds for dismissing Count VI at this time.

## V.    CONCLUSION

For the reasons stated herein, upon Defendants' Motion to Dismiss the Amended Complaint, ECF No. 12, the Court hereby **ORDERS** as follows:

1. With respect to Counts I, II, and III of the Amended Complaint, Defendants' Motion to Dismiss for lack of subject matter jurisdiction is hereby **GRANTED**, and such claims are hereby **DISMISSED WITH PREJUDICE**.

2.   With respect to Count IV of the Amended Complaint, Defendant's Motion to Dismiss for lack of subject matter jurisdiction is **DENIED** with respect to Plaintiff's claim that she was terminated in retaliation for making complaints to Defendant Ricoh of racial harassment beginning on or about August 15, 2016, but such motion is **GRANTED** with respect to all other claims in Count IV, consistent with this Opinion and Order.

3.   With respect to Counts V and VI of the Amended Complaint, Defendants' Motion to Dismiss for failure to state a claim is hereby **GRANTED** and such claims are **DISMISSED WITHOUT PREJUDICE** at this time.   Should Plaintiff wish to amend these claims, she may do so within **THIRTY (30) DAYS** of the date hereof.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED**.

/s/

Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, VA
April 24, 2018